UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLINT EDWARDS,<br><br>                              Plaintiff,<br><br>     - against -<br><br>DREW GIZZI, *et al.*,<br><br>                              Defendants. | No. 20-CV-7371 (KMK) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS GIZZI AND JOHNSEN'S
MOTION TO DISMISS THE COMPLAINT**

AUDREY STRAUSS
United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel:  (212) 637-2777
Fax:  (212) 637-2786
E-mail: jessica.rosenbaum@usdoj.gov

JESSICA F. ROSENBAUM
Assistant United States Attorney
 – Of Counsel –

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

FACTUAL BACKGROUND .................................................................................................... 2

PROCEDURAL HISTORY ....................................................................................................... 3

STANDARD OF REVIEW ....................................................................................................... 3

ARGUMENT .............................................................................................................................. 4

    I.    Plaintiff Cannot Assert a *Bivens* Claim ................................................................. 4

        A.    Plaintiff's Excessive Force Claim Presents a "New Context" ..................... 6

        B.    Special Factors Counsel Against Recognizing a *Bivens* Claim Here .......... 7

    II.   Plaintiff Fails to Plead an Excessive Force Claim ................................................... 9

    III.  Plaintiff Fails to Plead a Claim for Deliberate Indifference .................................. 11

    IV.  Defendants Are Entitled to Qualified Immunity .................................................... 12

CONCLUSION ........................................................................................................................ 13

# TABLE OF AUTHORITIES

**P**AGE(S)

**C**ASES

*Abdoulaye v. Cimaglia*,
  No. 15-cv-4921 (PKC), 2018 WL 1890488 (S.D.N.Y. Mar. 30, 2018) ................................6, 7

*Adekoya v. Holder*,
  751 F. Supp. 2d 688 (S.D.N.Y. 2010) ....................................................................................11

*Anderson v. Creighton*,
  483 U.S. 635 (1987) ................................................................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................................3, 4

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) .......................................................................................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................3, 12

*Bertin v. United States*,
  478 F.3d 489 (2d Cir. 2007) ....................................................................................................4

*Bivens v. Six Unknown Named Agents*,
  403 U.S. 388 (1971) ......................................................................................................... passim

*Bush v. Lucas*,
  462 U.S. 367 (1983) .................................................................................................................8

*Carlson v. Green*,
  446 U.S. 14 (1980) ........................................................................................................... passim

*Chance v. Armstrong*,
  143 F.3d 698 (2d Cir. 1998) .............................................................................................11, 12

*Cuoco v. Moritsugu*,
  222 F.3d 99 (2d Cir. 2000) .....................................................................................................11

*Darnell v. Pineiro*,
  849 F.3d 17 (2d Cir. 2017) .......................................................................................................1

*Davis v. Passman*,
  442 U.S. 228 (1979) .......................................................................................................4, 7, 9

*Doe v. Hagenbeck*,
  870 F.3d 36 (2d Cir. 2017)..................................................................................................5

*Ellis v. Catalano*,
  No. 16-CV-8452 (KMK), 2020 WL 1956963 (S.D.N.Y. Apr. 23, 2020) ...............................10

*Estelle v. Gamble*,
  429 U.S. 97 (1976)............................................................................................................11

*Garcia v. Does*,
  779 F.3d 84 (2d Cir. 2015)................................................................................................12

*Graham v. Connor*,
  490 U.S. 386 (1989)............................................................................................................1

*Hathaway v. Coughlin*,
  37 F.3d 63 (2d Cir. 1994) .................................................................................................12

*Hernandez v. Mesa*,
  140 S. Ct. 735 (2020).........................................................................................................5

*Hudson v. McMillian*,
  503 U.S. 1 (1992)................................................................................................................9

*Koch v. Christie's Int'l PLC*,
  785 F. Supp. 2d 105 (S.D.N.Y. 2011), *aff'd*, 699 F.3d 141 (2d Cir. 2012) ..............................2

*Martinez v. Aycock-West.*,
  164 F. Supp. 3d 502 (S.D.N.Y. 2016).................................................................................4

*McKenna v. Wright*,
  386 F.3d 432 (2d Cir. 2004)..............................................................................................12

*Minneci v. Pollard*,
  565 U.S. 118 (2012)............................................................................................................9

*Morgan v. Shivers*,
  No. 14-cv-7921 (GHW), 2018 WL 618451 (S.D.N.Y. Jan. 29, 2018)..............................6, 7, 9

*Ojo v. United States*,
  No. 16 CV 4112, 2019 WL 3852391 (E.D.N.Y. Aug. 15, 2019) ..............................................6

*Ortiz v. Pearson*,
  88 F. Supp. 2d 151 (S.D.N.Y. 2000)...............................................................................9, 10

*Ramirez v. Tatum*,
  No. 17 Civ. 7801 (LGS), 2018 WL 6655600 (S.D.N.Y. Dec. 19, 2018) .................................6

*Rivera v. Samilo*,
 370 F. Supp. 3d 362 (E.D.N.Y. 2019) ...................................................................................9

*Romano v. Howarth*,
 998 F.2d 101 (2d Cir. 1993) .................................................................................................10

*Smith v. Carpenter*,
 316 F.3d 178 (2d Cir. 2003) .................................................................................................11

*United States v. Clint Edwards*,
 No. 18-cr-00163 (CS) (S.D.N.Y. 2017) ..................................................................................2

*United States v. Clint Edwards*,
 No. 19-cr-00018 (JPO) (S.D.N.Y. 2019) ............................................................................2, 3

*Wright v. Goord*,
 554 F.3d 255 (2d Cir. 2009) .................................................................................................10

*Ziglar v. Abbasi*,
 137 S. Ct. 1843 (2017) ................................................................................................. passim

**STATUTES**

18 U.S.C. § 115(a)(1)(B) .............................................................................................................1, 2

18 U.S.C. § 2422(b) .....................................................................................................................1, 2

28 U.S.C. § 2679(b) ..........................................................................................................................8

28 U.S.C. § 2680(h) .........................................................................................................................8

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) ..........................................................................1, 3, 12

Deputy U.S. Marshal Drew Gizzi and District Security Officer Robert Johnsen (collectively, "Defendants"), by their attorney, Audrey Strauss, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff Clint Edwards' Complaint, ECF No. 1, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff is currently serving a 21-year sentence in connection with two criminal prosecutions in this District: for coercion and enticement of a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b), and for threatening a federal judge and law enforcement officer, in violation of 18 U.S.C. § 115(a)(1)(B).

In his Complaint, Plaintiff alleges that he was subjected to excessive force and cruel and unusual punishment during an incident that occurred during his sentencing hearing. Specifically, Plaintiff alleges that he was "tak[en] . . . down" after "yelling at the judge and [prosecutor]," Compl. ¶¶ 3, 4, and seeks to pursue constitutional tort claims under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) ("*Bivens*"). Plaintiff appears to assert an excessive force claim under the Fifth and/or Eighth Amendment and, potentially, a deliberate indifference claim. Compl. ¶ 6.[1] But the facts do not support a *Bivens* claim. Nor has Plaintiff established the elements of a claim for excessive force or deliberate indifference. And, even if he had, Defendants are entitled to qualified immunity. Accordingly, the Complaint should be dismissed.

---

[1] While the Supreme Court once stated that "the Eighth Amendment's protections d[o] not attach until after conviction *and sentence*," *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989) (emphasis added), the Second Circuit has more recently suggested that the Eighth Amendment applies at any time after conviction, *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Here, the alleged mistreatment occurred post-conviction, but not while Plaintiff was serving out a criminal sentence; thus, a Fifth Amendment analysis may be more apt. Out of an abundance of caution, however, this memorandum addresses both Amendments.

## FACTUAL BACKGROUND

On July 2, 2018, Plaintiff pleaded guilty to coercion and enticement of a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b). *See* Plea, *United States v. Clint Edwards*, No. 18-cr-00163 (CS) ("*Edwards I*") (S.D.N.Y. July 2, 2018), ECF No. 33.[2] In connection with that guilty plea, Judge Seibel sentenced Plaintiff to 240 months of imprisonment. Transcript of Record at 33, *Edwards I* (S.D.N.Y. Nov. 30, 2018), ECF No. 44. According to Plaintiff's allegations, "[a]fter the judge state[d] how many months I was getting sentence[d] to I start adding up the months to years and when I finally added it all up and knew I got 20 years I black out. I remember yelling at the judge and [prosecutor]." Compl. ¶ 3. *See also* Transcript of Record at 34-35, *Edwards I* (S.D.N.Y. Nov. 30, 2018), ECF No. 44 (reflecting courtroom events); Incident Report, Compl. Ex. 1 ("Upon being sentenced to 240 months in Jail, Edwards became agitated and left the chair he was seated in. Edwards was yelling loudly at Judge Seibel and others in the courtroom and he repeatedly ignored the instructions of USMS personnel Drew Gizzi and Robert Johns[e]n to return to his seat."). The incident report attached to the Complaint reflects that, "[a]t some point, USMS personnel found it necessary to physically restrain Edwards." Compl. Ex. 1. Plaintiff alleges that Defendants, in the process of restraining him, broke his arm. Compl. ¶ 4. He further alleges that, after he "told the employees that my arm was broken[,] . . . [s]omeone called for an ambulance and I was brought to Westchester Medical Center . . . ." *Id.* ¶ 5.

Plaintiff was subsequently indicted for threatening a federal judge and law enforcement officer, in violation of 18 U.S.C. § 115(a)(1)(B). Indictment, *United States v. Clint Edwards*, No.

---

[2] On a motion to dismiss, the Court can take judicial notice of other lawsuits, judicial decisions, and litigation filings. *Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105, 112 (S.D.N.Y. 2011), *aff'd*, 699 F.3d 141 (2d Cir. 2012) ("[C]ourts can consider court documents or matters of public record at the motion to dismiss stage where both parties had notice of their contents and the documents are integral to the complaint.") (Internal citations omitted).

19-cr-00018 (JPO) ("*Edwards II*") (S.D.N.Y. Jan. 8, 2019), ECF No. 1. Plaintiff pleaded guilty to those charges, Transcript of Record, *Edwards II* (S.D.N.Y. June 3, 2019), ECF No. 21, and was sentenced to 36 months imprisonment, 12 of which are to run consecutive with the 240-month sentence imposed by Judge Seibel, Transcript of Record at 14-15, *Edwards II* (S.D.N.Y. Sept. 27, 2019), ECF No. 30.

## PROCEDURAL HISTORY

Plaintiff filed this lawsuit *pro se* on September 9, 2020. ECF No. 1. By order dated October 23, 2020, the Court *sua sponte* dismissed Plaintiff's Federal Tort Claims Act ("FTCA") claim against the United States without prejudice, as the Complaint did not allege facts suggesting that Plaintiff had exhausted his administrative remedies. ECF No. 8 at 1-2. On February 1, 2021, Defendants Gizzi and Johnsen filed a letter seeking a pre-motion conference in connection with their anticipated motion to dismiss. ECF No. 32. The Court directed that Defendants file their motion papers by March 1, 2021. ECF No. 33.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[3] A court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). A plaintiff is not required to provide "detailed factual allegations," but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Pleadings cannot survive by making "naked

---

[3] Internal citations, quotation marks, and alterations omitted herein unless otherwise noted.

3

assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

Courts must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007). But "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Martinez v. Aycock-West.*, 164 F. Supp. 3d 502, 508 (S.D.N.Y. 2016) (Karas, J.).

## ARGUMENT

**I.      Plaintiff Cannot Assert a *Bivens* Claim**

In *Bivens*, the Supreme Court held that the petitioner, who was handcuffed in his home by narcotics officers without a warrant, had a right of action under the Fourth Amendment's prohibition of unreasonable searches and seizures. 403 U.S. at 397. The Court held that damages could lie against the federal officials for constitutional violations, absent statutory authorization, because such a remedy could be judicially implied under the Constitution. *See Bivens*, 403 U.S. at 399 (Harlan, J., concurring).

Subsequently, the Supreme Court has recognized only two additional contexts for *Bivens* remedies: one in a case of sex discrimination brought by a federal employee under the due process clause of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979), and the second for violations of the Eighth Amendment's prohibition on cruel and unusual punishment, where prison officials' failure to treat an inmate's asthma led to his death, *Carlson v. Green*, 446 U.S. 14 (1980).

The Supreme Court has noted that "*Bivens*, *Davis*, and *Carlson* . . . represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017). The Supreme Court has further cautioned that "expanding the *Bivens* remedy is now a disfavored judicial activity," regardless of "how

4

desirable [a remedy] might be as a policy matter, or how compatible with the statute." *Abbasi*, 137 S. Ct. at 1856-57. Indeed, despite many opportunities to extend *Bivens*, the Supreme Court has consistently declined to do so and recently observed that "if 'the Court's three *Bivens* cases [had] been . . . decided today,' it is doubtful that we would have reached the same result." *Hernandez v. Mesa*, 140 S. Ct. 735, 742-43 (2020) (quoting *Abbasi*, 137 S. Ct. at 1856); *see also Doe v. Hagenbeck*, 870 F.3d 36, 43 (2d Cir. 2017) ("In the forty-six years since *Bivens* was decided, the Supreme Court has extended the precedent's reach only twice, and it has otherwise consistently declined to broaden *Bivens* to permit new claims.").

Where a complaint raises a *Bivens* claim, the court engages in a two-step inquiry. First, the court must ascertain whether the "case presents a new *Bivens* context." 137 S. Ct. at 1859. Whether a context is "new," as compared to *Bivens* remedies previously recognized by the Supreme Court, takes into account differences in:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860. The Supreme Court has counseled that the "understanding of a 'new context'" should be construed broadly so as to include any context that is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Hernandez*, 140 S. Ct. at 743 (quoting *Abbasi*, 137 S. Ct. at 1859). "[E]ven a modest extension" of one of the three recognized scenarios "is still an extension" that presents a new context. *Abbasi*, 137 S. Ct. at 1864.

If the case presents a new *Bivens* context, a court must then evaluate whether "there are special factors counselling hesitation in the absence of affirmative action by Congress." 137 S. Ct. at 1857. The "special factors" inquiry "must concentrate on whether the Judiciary is well suited,

5

absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58. "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* at 1858. Additionally, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." *Id.* at 1865.

### A. Plaintiff's Excessive Force Claim Presents a "New Context"

Plaintiff's excessive force claim is meaningfully different from "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma." *Abbasi*, 137 S. Ct. at 1860.[4] Indeed, courts in the Second Circuit have routinely held that "there is no *Bivens* remedy for . . . excessive force claims." *Ramirez v. Tatum*, No. 17 Civ. 7801 (LGS), 2018 WL 6655600, at *5 (S.D.N.Y. Dec. 19, 2018). *See also, e.g.*, *Ojo v. United States*, No. 16 CV 4112, 2019 WL 3852391, at *13 (E.D.N.Y. Aug. 15, 2019) (Eighth Amendment excessive force claim implicated new *Bivens* context); *Abdoulaye v. Cimaglia*, No. 15-cv-4921 (PKC), 2018 WL 1890488, at *6-7 (S.D.N.Y. Mar. 30, 2018) (Fifth Amendment excessive force claim implicated new *Bivens* context); *Morgan v. Shivers*, No. 14-cv-7921 (GHW), 2018 WL 618451, at *5 (S.D.N.Y. Jan. 29, 2018) (same).

In *Morgan*, the court analyzed a Fifth Amendment excessive force *Bivens* claim. The plaintiff, a federal inmate, alleged that correctional officers used excessive force in removing

---

[4] It is unclear if Plaintiff intends to assert a deliberate indifference claim based on Defendants' response in the courtroom to his alleged broken arm. To the extent he does, such a claim on these facts is distinct from the deliberate indifference claim recognized in *Carlson*—"a claim against prison officials for failure to treat an inmate's asthma." *Abbasi*, 137 S. Ct. at 1860. Here, the Complaint specifically alleges that an ambulance was called after Plaintiff complained about his arm being injured. Compl. ¶ 5. There are no allegations that Plaintiff did not receive appropriate treatment for his injuries. Accordingly, Plaintiff has no *Bivens* remedy for any claim of deliberate indifference.

6

contraband from his body, in violation of the Fifth Amendment. The court concluded that this presented a new *Bivens* context because the claim was meaningfully different from the gender discrimination claim raised in *Davis* (the only previously-recognized *Bivens* claim under the Fifth Amendment) and concerned a different constitutional right than the claims in *Carlson* (the only previously-recognized *Bivens* claim arising in the prison context). 2018 WL 618451, at *5. Similarly, in *Abdoulaye*, the court determined that a Fifth Amendment excessive force claim brought by a pretrial detainee presented a new *Bivens* context, reasoning:

> A Fifth Amendment excessive force claim clearly places a different constitutional right at issue than the Eighth and Fourth Amendment claims in *Carlson* and *Bivens*, respectively. . . . Even though *Davis* also involved Fifth Amendment rights, there are obvious and meaningful differences between excessive force and gender discrimination claims, the employment and pretrial proceeding contexts, and the legal mandates of a congressperson and a deputy marshal.

2018 WL 1890488, at *6.

Here, the differences in (a) the nature of the claim and (b) the right under which it is asserted, each constitute at least a "modest extension" of a recognized *Bivens* context, *Abbasi*, 137 S. Ct. at 1864—and, combined, they render the instant case meaningfully different from previous *Bivens* cases. Plaintiff's claims fall well outside the confines of the Fifth Amendment equal protection claim recognized in *Davis* and the Eighth Amendment claim for cruel and unusual punishment recognized in *Carlson*. Of the three recognized *Bivens* contexts, Plaintiff's claims here are perhaps most similar to the claims at issue in *Bivens* itself. However, Plaintiff was not arrested without a warrant in his home, and his claims arise under the Fifth or Eighth Amendment, not the Fourth Amendment. Plaintiff's claims thus clearly present a new *Bivens* context.

### B.    Special Factors Counsel Against Recognizing a *Bivens* Claim Here

The second step of the *Abbasi* analysis, which requires a court to consider whether special factors counsel hesitation in the absence of affirmative action by Congress, also weighs against

7

recognizing a *Bivens* remedy in this action. Congress has created an intricate alternative remedial structure in the FTCA, which provides for monetary damages for torts committed by federal employees in the course of their official duties. *See* 28 U.S.C. § 2679(b). Moreover, in 1974, three years after *Bivens* was decided, Congress amended the FTCA to provide for monetary damages for certain intentional torts (which are otherwise excluded from FTCA coverage), including claims arising out of "assault" and "battery" with "regard to acts or omissions of investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h); Act of Mar. 16, 1974, Pub. L. 93–253, § 2, 88 Stat. 50; *see also Carlson*, 446 U.S. at 20 (concluding that Federal Bureau of Prisons officials are law enforcement officials for purposes of the investigative or law enforcement officer carve-out to the intentional tort exception in 28 U.S.C. § 2680(h)).

The remedy recognized in *Bivens* was judicially-created in reaction to Congressional silence. Since *Bivens*, Congress has made a clear choice regarding how to hold law enforcement officers liable for allegedly intentional torts like excessive force—the FTCA. As the Supreme Court noted in *Abbasi*, "[w]hen a party seeks to assert an implied cause of action under the Constitution itself, . . . [t]he question is 'who should decide' whether to provide for a damages remedy, Congress of the courts? The answer most often will be Congress." 137 S. Ct. at 1857 (citing *Bush v. Lucas*, 462 U.S. 367, 380 (1983)). This alternative FTCA remedy counsels strongly against implying a novel *Bivens* remedy for the same type of conduct. *See Abbasi*, 137 S. Ct. at 1858 (explaining that Congress is better positioned to make "an assessment of [an implied remedy's] impact on governmental operations systemwide," "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the

8

Government itself," and "the proper formulation and implementation of public policies" through the legal system).[5]

The FTCA provides a remedy for the conduct of which Plaintiff complains and, thus, "this is not a case like *Bivens* or *Davis* in which it is damages or nothing." *Abbasi*, 137 S. Ct. at 1862. Because Plaintiff could assert claims under the FTCA, the Court should decline to allow his *Bivens* claims to proceed.[6]

## II. Plaintiff Fails to Plead an Excessive Force Claim

Even if Plaintiff were able to assert a *Bivens* claim for excessive force, he has failed to plead the requisite elements of such a claim. To make out a constitutional claim for excessive force, Plaintiff "must prove both an objective component (that the use of force was objectively serious), and a subjective component (that the officials acted with a sufficiently culpable state of mind)." *Ortiz v. Pearson*, 88 F. Supp. 2d 151, 160 (S.D.N.Y. 2000) (*citing Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).[7] "The objective element focuses on the harm done in light of 'contemporary standards of decency,' and asks whether 'the deprivation alleged is sufficiently serious, or harmful

---

[5] The Supreme Court, more than four decades ago in *Carlson*, described the FTCA and *Bivens* as "parallel" and "complementary" remedies. 446 U.S. at 19-20. In 2017, the *Abbasi* Court recognized that the decades of jurisprudence since the *Bivens* decision reflect that "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Id.* at 1863. Moreover, those alternative methods "need not be perfectly congruent" to preclude a *Bivens* remedy. *Minneci v. Pollard*, 565 U.S. 118, 129 (2012). *See also Morgan*, 2018 WL 618451, at *6 ("[D]espite the fact that previously, the FTCA and *Bivens* were considered 'parallel, complementary causes of action,' the Court believes that, in light of the Supreme Court's recent decision in *[Abbasi]*, the existence of the alternative remedial structure is nevertheless a factor counselling hesitation in extending an implied damages remedy . . . .") (Quoting *Carlson*, 446 U.S. at 20).

[6] That Plaintiff may not have an available FTCA remedy in *this* case due to his failure timely to bring administrative claims or other procedural bars is immaterial. *See, e.g.*, *Rivera v. Samilo*, 370 F. Supp. 3d 362, 370 (E.D.N.Y. 2019) ("The present unavailability of an FTCA claim is immaterial to the analysis of whether the existence of an adequate alternative process counsels in favor of judicial restraint.").

[7] The excessive force analysis is the same under the Fifth and Eighth Amendments. *Ortiz*, 88 F. Supp. 2d at 160.

enough, to reach constitutional dimensions.'" *Ellis v. Catalano*, No. 16-CV-8452 (KMK), 2020 WL 1956963, at *8 (S.D.N.Y. Apr. 23, 2020) (quoting *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) and *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993)). "The subjective element requires a showing that the defendant 'had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct.'" *Ellis*, 2020 WL 1956963, at *9 (quoting *Wright*, 554 F.3d at 268). In weighing the objective and subjective factors, courts consider "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Ortiz*, 88 F. Supp. 2d at 160.

The Complaint contains no allegation to support that Defendants acted with a malicious and sadistic intent. Instead, Plaintiff's allegations confirm that Defendants applied force in a good-faith effort to maintain discipline. Indeed, as reflected in the incident report attached to the Complaint, "USMS personnel found it necessary to physically restrain Edwards" after Edwards had "left the chair he was seated in[,] . . . was yelling loudly at Judge Seibel and others in the courtroom and . . . repeatedly ignored the instructions of USMS personnel Drew Gizzi and Robert Johns[e]n to return to his seat." Compl. Ex. 1. In fact, Plaintiff admits that the incident in which his arm was broken was precipitated by him "yelling at the judge and [prosecutor]" and, further, that he received immediate medical attention upon alerting the courtroom officers of a possible injury. Compl. ¶¶ 3-5.

Accordingly, Plaintiff has failed to raise a material issue of fact as to the subjective or objective components of his excessive force claim, and his claim should be dismissed.

### III. Plaintiff Fails to Plead a Claim for Deliberate Indifference

Plaintiff similarly fails to state a claim premised on deliberate indifference. In order to establish "a claim arising out of inadequate medical care," an individual "must prove 'deliberate indifference' to [his] serious medical needs." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).[8] A deliberate indifference claim includes two components: "(1) an objective 'medical need' element measuring the severity of the alleged deprivation, and (2) a subjective 'deliberate indifference' element measuring whether the [alleged wrongdoer] acted with a sufficiently culpable state of mind." *Adekoya*, 751 F. Supp. 2d at 696 (citing *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)). "An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Chance*, 143 F.3d at 702. As to non-medical personnel, such as Defendants Gizzi and Johnsen, a plaintiff must plausibly allege that defendants "intentionally den[ied] or delay[ed] access to medical care or intentionally interfere[ed] with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05.

Here, Plaintiff makes conclusory allegations that all of the named defendants exhibited "deliberate indifference to my health when they broke my arm and left me in extreme pain." Compl. ¶ 6. The Complaint is wholly devoid of factual allegations from which it can be inferred that either Defendant Gizzi or Defendant Johnsen had any personal involvement in any action to

---

[8] In the Second Circuit, the analyses of deliberative indifference claims arising under the Fifth and Eighth Amendments are the same. *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) ("We have often applied the Eighth Amendment deliberate indifference test to pre-trial detainees bringing actions under the Due Process Clause of the Fourteenth Amendment. We see no reason why the analysis should be different under the Due Process Clause of the Fifth Amendment."); *Adekoya v. Holder*, 751 F. Supp. 2d 688, 694 n.4 (S.D.N.Y. 2010) ("The tests for deliberate indifference under the Eighth and Fifth Amendments are the same.").

"intentionally deny[] or delay[] access to medical care" or to "intentionally interfer[e] with the treatment once prescribed." Instead, the Amended Complaint contains precisely the sort of "labels and conclusions," *Twombly*, 550 U.S. at 555, that plainly do not suffice to assert a deliberate indifference claim against either Defendant in their individual capacity.

Moreover, Plaintiff has failed to plead the elements of a deliberate indifference claim. First, Plaintiff does not plead a sufficiently serious deprivation; even assuming that Plaintiff alleged a "sufficiently serious" medical need (i.e., a "condition of urgency . . . that may produce death, degeneration, or extreme pain," *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)), he has not identified what additional treatment he should have been given. In fact, Plaintiff acknowledges that after he "told the employees that [his] arm was broken," an ambulance arrived and took him to the hospital. Compl. ¶ 5. Second, Plaintiff does not allege that Defendants "[knew] of and disregard[ed] an excessive risk." *Chance*, 143 F.3d at 702. To the contrary—Plaintiff admits that the officers only took action after Plaintiff threatened to physically harm Judge Seibel, Compl. ¶¶ 3-5, and further admits that he was given immediate medical attention. *Id.* ¶ 5.

The Complaint thus fails to state a claim of deliberate indifference.

## IV. Defendants Are Entitled to Qualified Immunity[9]

Qualified immunity shields officials from liability for civil damages when "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015). The Supreme Court has held that "[w]hether qualified immunity can be invoked turns on the objective legal reasonableness of the official's acts. And reasonableness of official

---

[9] A Rule 12(b)(6) motion based on qualified immunity may be granted if "the facts supporting the defense appear[] on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 435-36 (2d Cir. 2004).

action, in turn, must be assessed in light of the legal rules that were clearly established at the time the action was taken." *Abbasi*, 137 S. Ct. at 1866.

Given that Plaintiff fails to plead a claim for excessive force or deliberate indifference, he certainly cannot establish that it was objectively unreasonable for Defendants to believe their actions did not violate any of his constitutional rights. Further, holding Defendants individually liable here, where they reasonably responded to Plaintiff's physical and verbal threats against a federal judge and prosecutor, would create precisely the "fear of personal monetary liability and harassing litigation [that] will unduly inhibit officials in the discharge of their duties" that the doctrine of qualified immunity was intended to avert. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

## CONCLUSION

For the reasons set forth herein, Plaintiff's Complaint, insofar as it asserts claims against Defendants Gizzi and Johnsen, should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: New York, New York
       March 1, 2021

Respectfully submitted,

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
*Attorney for Defendants*

By: */s/ Jessica F. Rosenbaum*
    JESSICA F. ROSENBAUM
    Assistant United States Attorney
    Telephone: (212) 637-2777
    Facsimile: (212) 637-2786
    E-mail: jessica.rosenbaum@usdoj.gov

13