UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CLINT EDWARDS,

                              Plaintiff,

     v.

DREW GIZZI, *et al.*,

                              Defendants.

No. 20-CV-7371 (KMK)

<u>OPINION & ORDER</u>

---

<u>Appearances</u>:

Clint Edwards
Ossining, NY
*Pro Se Plaintiff*

Danielle Judith Levine, Esq.
United States Attorney's Office
Southern District of New York
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

       Clint Edwards ("Edwards" or "Plaintiff"), proceeding pro se, brings this Complaint, under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against Deputy U.S. Marshal ("DUSM") Drew Gizzi ("Gizzi"), District Security Officer ("DSO") Robert Johnsen ("Johnsen"), GEO Guard Michael Lewis ("Lewis"), Court Security Officer ("CSO") Frank Pena ("Pena"), CSO Walter Cook ("Cook"), CSO Anthony Mercurio ("Mercurio"), and John Does 1–10 (collectively, "Defendants"), alleging that Defendants used excessive force during an incident that occurred during Plaintiff's sentencing hearing, which

resulted in Plaintiff's left arm being broken.[1, 2] (*See* Compl. (Dkt. No. 1).)[3] Before the Court are Defendants Gizzi and Johnsen's Motion To Dismiss the Complaint (the "Motion"), (Not. of Mot. (Dkt. No. 38)), and Defendant Lewis' self-titled Cross Motion To Dismiss the Complaint (the "Cross Motion"; together, the "Motions"), (Dkt. No. 41), both filed pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, the Motions are granted.

## I.  Background

### A.  Factual Background

Unless otherwise stated, the following facts are drawn from Plaintiff's Complaint and are assumed true for the purpose of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

The events giving rise to this Action took place during a sentencing in front of the Honorable Cathy Seibel at the federal courthouse for the U.S. District Court Southern District of New York in White Plains, NY.  (*See* Compl. 3; *see also* Defs. Gizzi and Johnsen's Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem.") 2 (Dkt. No. 39).)  On July 2, 2018, Plaintiff pled guilty to coercion and enticement of a minor to engage in illegal sexual activity under 18

---

[1] The Court notes that Defendant Johnsen's name is spelled in three different ways in the papers.  In the Complaint, Plaintiff spells it as "Johnsten."  (*See* Compl. 1–3.)  In the first incident report attached to the Complaint, it is also spelled "Johnsten."  (*Id*. at 5.).  However, in the next incident report attached to the Complaint, titled the Court Facility Incident Report, his name is spelled "Johnson."  (*Id*. at 7.)  And, in all the papers filed by his attorney, his name is spelled "Johnsen."  (*See, e.g.*, Dkt. Nos. 14, 32, 38, 39.)  The Court will use the spelling used by Defendant Johnsen's attorney: "Johnsen."

[2] Plaintiff also named the United States as a Defendant, but the United States was dismissed as a Defendant by the Court's Order on October 23, 2020.  (*See* Order (Dkt. No. 8).)

[3] When citing to the Complaint and the attached exhibits, the Court refers to the ECF-stamped page numbers at the top right-hand corner of each page.

U.S.C. § 2422(b).  (*See* Dkt. No. 42, Case No. 18-CR-163.)[4]  On November 30, 2018, Judge Seibel sentenced Plaintiff to 240 months' imprisonment.  (*See* Compl. 7.)

According to Plaintiff, "[w]hen I got to the courtroom I had my cuffs and leg cuffs remove[d] even though the Marshalls knew I was facing a lot of time and have a serious mental health condition."  (*Id.* at 3.)  Plaintiff alleges that, "[a]fter the [J]udge state[d] how many months I was getting sentence[d] to I start[ed] adding up the moths [sic] to years and when I finally added it all up and knew I got 20 years I black[ed] out.  I remember yelling at the [J]udge and the D.A."  (*Id.*)  Plaintiff also alleges:

> Then I came back to it while they were taking me down to the ground. Once I was down I stop[ped] any resistance that I was doing before.  One of the many employees that where [sic] there told me to put my arms behind my back.  I put my right arm back first and then my left arm.  While putting my left arm behind my back I felt someone grab[] it, and str[a]ighten it out.  Then I felt someone hit it and a pop.  At this time I knew my arm was broken.

(*Id.*)  Next, Plaintiff alleges that when he "told the employees that [his][ arm was broken, "[s]omeone called for an ambulance and I was brought to Westchester Medical Center in Valhalla, N.Y."  (*Id.*)  Plaintiff states that he "got a[n] X-Ray done and was told by the doctor that [he] had subtain [sic] a broken left arm."  (*Id.*)

Plaintiff attached two incident reports to his Complaint.  (*See id.* at 5–7.)  The first incident report provides the following additional details:

> Toward the end of the proceeding . . . [Plaintiff] stood up on his own accord and . . . moved to the defense table . . . [He] was ordered repeatedly by DUSM Gizzi and DSO Johnsten to follow them back into the cell block.  [Plaintiff], now taking a boxing style stance refused to follow the lawful orders and emplaced himself in front of the jury box . . . . [Plaintiff] then took an even more aggressive

---

[4] *See Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105, 112 (S.D.N.Y. 2011) ("[C]ourts can consider court documents or matters of public record at the motion to dismiss stage where both parties had notice of their contents and the documents are integral to the complaint."), *aff'd*, 699 F.3d 141 (2d Cir. 2012).

> stance, raising his hands further up his body and slightly cocking his arms back. At this point he yelled at AUSA Grossman, whom was standing in the gallery near defense counsel, exclaiming that she was a [b—] and subsequently lounged [sic] toward her desk. As [Plaintiff] made this quick and aggressive movement, he was grabbed simultaneously by DUSM Gizzi and DSO Johnsten. [Plaintiff] was taken backwards, flinging papers into the air from the prosecution's desk, and landing on the ground with DUSM Gizzi and DSO Johnsten still holding onto him. Multiple CSOs responded, applying restraints to his legs and arms. The incident at this point became calm, and [Plaintiff] was brought up to a sitting position.

(*Id.* at 5–6.) The second incident report, titled the "Court Facility Incident Report" provides further information about the incident:

> Upon being sentenced to 240 months in jail, [Plaintiff] became agitated and left the chair he was seated in. [Plaintiff] was yelling loudly at Judge Seibel and others in the courtroom and he repeatedly ignored the instructions of USMS personnel Drew Gizzi and Robert Johnson to return to his seat. At some point, USMS personnel found it necessary to physically restrain [Plaintiff]. [Plaintiff] and the USMS personnel fell to the floor where [Plaintiff] continued to resist efforts to control him. [CSOs] Frank Pena, Anthony Mercurio[,] and Walker Cook assisted USMS personnel in applying handcuffs to [Plaintiff]. CSO Pena sustained a cut on his hand and other injuries when he assisted USMS personnel in applying handcuffs to [Plaintiff].

(*Id.* at 7.)

The Court construes Plaintiff's Complaint as alleging two *Bivens* claims: (1) an Eighth or Fifth Amendment claim for excessive force, and (2) an Eighth Amendment claim for deliberate indifference. Plaintiff claims that as a result of Defendants' alleged violations, he experienced "[p]ain and suffering, emotional distress, and a broken left arm." (*Id.* at 4.) Plaintiff seeks $20 million in damages—$10 million in compensatory damages and $10 million in punitive damages. (*Id.*)

B. Procedural History

Plaintiff filed his Complaint on September 9, 2020. (Dkt. No. 1.) On October 1, 2020, then-Chief Judge McMahon granted Plaintiff leave to proceed in forma pauperis. (Dkt. No. 4.) On October 23, 2020, the Court dismissed Plaintiff's Federal Tort Claims Act ("FTCA"), 28

U.S.C. §§ 1346(b), 2671–80, claim against the United States without prejudice, because Plaintiff did not allege any facts suggesting that he had exhausted his administrative remedies. (Dkt. No. 8.) The Court also added Defendants Mercurio and Cook because the "incident reports that Plaintiff attaches to the Complaint show that Court Security Officers Anthony Mercurio and Walter Cook were among those who 'assisted the USMS personnel in gaining control of Edwards.'" (*Id.*). The Court therefore construed the Complaint as asserting claims against Mercurio and Cook. (*Id.*)

On December 21, 2020, Defendants Gizzi and Johnsen requested an extension of time to respond to the Complaint, (Dkt. No. 14), which the Court granted on December 29, 2020, (Dkt. No. 16). On January 6, Defendant Lewis filed his Answer, (Dkt. No. 19), as well as a Rule 7.1 Corporate Disclosure Statement, (Dkt. No. 18). On January 15, Defendant Lewis filed an Amended Answer. (Dkt. No. 24.) On February 1, 2021, Defendants Gizzi and Johnsen filed a pre-motion letter outlining the grounds for their proposed motion to dismiss. (Dkt. No. 32.) The same day, the Court granted Defendants Gizzi and Johnsen leave to file their anticipated motion and set a briefing schedule. (Dkt. No. 33.) On February 18, 2021, Plaintiff requested an extension to respond to Defendants Gizzi and Johnsen's motion after testing positive for COVID-19. (Dkt. No. 35.) The Court granted Plaintiff's request on February 19, 2021. (Dkt. No. 36.) On March 1 2021, Defendants Gizzi and Johnsen filed their Motion and accompanying papers. (Dkt. Nos. 38–40.) On March 2, 2021, Defendant Lewis filed his Cross Motion on the same grounds as Defendants Gizzi and Johnsen. (Dkt. No. 41.) Plaintiff filed his Opposition to Defendants Gizzi, Johnsen, and Lewis's Motions on March 31, 2021. (Dkt. No. 48.) On April 13, 2021, Defendants Gizzi and Johnsen filed a letter stating that they intended to rest on their opening papers. (Dkt. No. 50.) On April 14, 2021, Defendant Lewis also wrote to the

Court stating that he did not intend to file a Reply Brief. (Dkt. No. 52.) The Court deemed the Motions to be fully submitted. (Dkt. Nos. 51, 53.)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in

original) (quoting Fed. R. Civ. P. 8(a)(2))); *id*. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). However, when the complaint is from a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents either in [the plaintiff's] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted), and "[the plaintiff's]

opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [the plaintiff's] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and citation omitted)).

B. Analysis

1. *Bivens* Claims

In *Bivens*, "the Supreme Court 'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)), *cert. denied*, 560 U.S. 978 (2010); *see also M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013) (same); *Morales v. Related Mgmt. Co.*, No. 13-CV-8191, 2015 WL 7779297, at *10 (S.D.N.Y. Dec. 2, 2015) (same). "The purpose of the *Bivens* remedy is to deter individual federal officers from committing constitutional violations." *Arar*, 585 F.3d at 571 (quotation marks omitted).

"In the *Bivens* case, the [Supreme] Court broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such

8

a claim." *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020). The Court has extended *Bivens* only two times: first in *Davis v. Passman*, 442 U.S. 228 (1979), where the Court held that a former congressional staffer could bring a sex discrimination claim employer under the Due Process Clause of the Fifth Amendment against her former employer for her termination, *see id.* at 248–49; and second in *Carlson v. Green*, 446 U.S. 14 (1980), where the Court held that the administratrix of the estate of a deceased a federal prisoner could bring an Eighth Amendment claim for failure to provide adequate medical treatment for the prisoner's asthma, which resulted in his death, *see id.* at 23–25.

The Supreme Court has stated that expansion of *Bivens* is "a disfavored judicial activity." *Hernandez,* 140 S. Ct. at 742 (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017)); *see also M.E.S.*, 712 F.3d at 671 (a remedy under *Bivens* "is a judicially created remedy," and, therefore, "federal courts have been reluctant to recognize such implied relief"). Further, the Supreme Court has stated that if "the [Supreme] Court's three *Bivens* cases [had] been decided today, it is doubtful that [it] would have reached the same result" and that, "for almost 40 years, [the Supreme Court] has consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez*, 140 S. Ct. at 742–43 (quotation marks and alterations omitted) (collecting cases); *see also Doe v. Hagenbeck*, 870 F.3d 36, 43 (2d Cir. 2017) ("In the forty-six years since *Bivens* was decided, the Supreme Court has extended the precedent's reach only twice, and it has otherwise consistently declined to broaden *Bivens* to permit new claims." (footnote omitted) (collecting cases)).

"When asked to extend *Bivens*, [courts] engage in a two-step inquiry. [Courts] first inquire whether the request involves a claim that arises in a 'new context' or involves a 'new category of defendants.'" *Hernandez*, 140 S. Ct. at 743 (quoting *Malesko*, 534 U.S. at 68). If a

9

court finds that a claim arises in a new context, the court proceeds to the second step and asks whether there are "any 'special factors [that] counse[l] hesitation' about granting the extension." *Id.* (alterations in original) (quoting *Abbasi*, 137 S. Ct. at 1857).

### a  New Context

"The [Supreme] Court has stressed that its "understanding of a 'new context' is broad." *Powell v. United States*, No. 19-CV-11351, 2020 WL 5126392, at *5 (S.D.N.Y. Aug. 31, 2020) (quoting *Hernandez*, 140 S. Ct. at 743). "Although the [Supreme] Court has not yet 'endeavor[ed] to create an exhaustive list of differences that are meaningful enough to make a given context a new one,' it has provided some instructive examples." *Id.* (alteration in original) (quoting *Abbasi*, 137 S. Ct. at 1859–60). For example:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S. Ct. at 1860. "'[E]ven a modest extension' of one of the three recognized scenarios 'is still an extension' that presents a new context." *Cruz v. Hastings*, No. 20-CV-4392, 2021 WL 4691375, at *6 (S.D.N.Y. Oct. 6, 2021) (alteration in original) (quoting *Abbasi,* 137 S. Ct. at 1864); *see also Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 58 (E.D.N.Y. 2017) ("As an initial matter, even though the Supreme Court has recognized causes of action in *Bivens* under the Fourth Amendment, in *Davis* under the Fifth Amendment, and in *Carlson* under the Eighth Amendment, that does not mean that any cause of action may lie under those Amendments simply by virtue of these Supreme Court cases."), *aff'd*, 755 F. App'x 67 (2d Cir. 2018).

Defendants argue that Plaintiff's excessive force claim presents a new context. (Defs.' Mem. 6–7.) Specifically, Defendants argue:

> Plaintiff's claims fall well outside the confines of the Fifth Amendment equal protection claim recognized in *Davis* and the Eighth Amendment claim for cruel and unusual punishment recognized in *Carlson*. Of the three recognized *Bivens* contexts, Plaintiff's claims here are perhaps most similar to the claims at issue in *Bivens* itself. However, Plaintiff was not arrested without a warrant in his home, and his claims arise under the Fifth or Eighth Amendment, not the Fourth Amendment.

(*Id.* at 7.)

Courts in this district have found that "[t]he Supreme Court has recognized only three *Bivens* contexts, none of which include . . . excessive force." *Ramirez v. Tatum*, No. 17-CV-7801, 2018 WL 6655600, at *5 (S.D.N.Y. Dec. 19, 2018) (declining to find *Bivens* remedy where the plaintiff, a pretrial detainee, alleged that correctional officers used excessive force when transporting him from the hospital to the jail); *see also Rivera v. Samilo,* 370 F. Supp. 3d 362, 369 (E.D.N.Y. 2019) (holding that an excessive force claim stemming from lawful arrest is sufficiently different from Fourth Amendment claim arising from a home search); *but see Bueno Diaz v. Mercurio*, 442 F. Supp. 3d 701, 707–08 (S.D.N.Y. 2020) (finding that a Fourth Amendment excessive force claim pursuant to a lawful arrest does not "expand [the] outer reaches" of *Bivens*, is a "run-of-the-mill challenge to a standard law enforcement operation," and operates within the scope of "substantial 'judicial guidance'" as to the bounds of excessive force). The present case differs from *Bueno Diaz*, because, as Defendants correctly point out, Plaintiff's claim does not arise under the Fourth Amendment, but instead under either the Eighth or Fifth Amendment. (*See* Defs.' Mem. 7.)[5] Courts have consistently found that excessive force cases

---

[5] Though the Court need not determine which Amendment applies at this stage, *see Akande v. Philips,* No. 17-CV-1243, 2018 WL 3425009, at *9 (W.D.N.Y. July 11, 2018) ("In the absence of any briefing, the most prudent course is to permit [the] [p]laintiff's claim of excessive

11

arising under either the Fifth or Eighth Amendment to present new *Bivens* contexts. *See Ojo v. United States*, No. 16-CV-4112, 2019 WL 3852391, at *13 (E.D.N.Y. Aug. 15, 2019) (holding that an Eighth Amendment excessive force claim presented new *Bivens* context), *report and recommendation adopted*, 2019 WL 4602823 (E.D.N.Y. Sept. 23, 2019); *Akande,* 2018 WL 3425009, at *9 (finding new *Bivens* context where the plaintiff's excessive force claim arose under either the Fifth or Eighth Amendments); *Abdoulaye v. Cimaglia*, No. 15-CV-4921, 2018 WL 1890488, at *6–7 (S.D.N.Y. Mar. 30, 2018) (noting that a Fifth Amendment excessive force claim presented new *Bivens* context); *Morgan v. Shivers*, No. 14-CV-7921, 2018 WL 618451, at *5–6 (S.D.N.Y. Jan. 29, 2018) (holding that Fifth Amendment excessive force claim presented new *Bivens* context).

Additionally, "the officers involved in *Bivens* were federal narcotics agents, an investigatory and enforcement force, whereas here, the officers [include] U.S. Marshals [and other court security officers], [] force[s] principally engaged in the protection of federal judicial process and the execution of warrants authorized by a judicial officer." *Style v. Mackey*, No. 17-CV-1691, 2020 WL 3055319, at *4 (E.D.N.Y. June 8, 2020); *see also Martinez v. D'Agata,* No. 16-CV-44, 2019 WL 6895436, at *7 (S.D.N.Y. Dec. 16, 2019) (noting that the type of officers involved, members of a federal task force, differed meaningfully from the drug

---

use of force to proceed under both the Fifth and Eighth Amendments for screening purposes . . . . "), the Court notes that it is likely the Eighth Amendment, and not the Fifth Amendment, that governs Plaintiff's excessive force claim, given Plaintiff's status as a convicted prisoner and not a pretrial detainee, *compare Ortiz v. Pearson,* 88 F. Supp. 2d 151, 160 (S.D.N.Y. 2000) (noting that the Fifth Amendment, rather than the Eighth Amendment, governed a pretrial detainee's claim of excessive force) *with Jeanty v. County of Orange*, 379 F. Supp. 2d 533, 539 (S.D.N.Y. 2005) ("[The] [p]laintiff's excessive force claim, which arose after he was convicted but before he was sentenced, is to be analyzed under the Eighth Amendment.").

enforcement officers in *Bivens*). Thus, the Court finds that Plaintiff's excessive force claim, whether it arises under the Fifth or Eighth Amendment, presents a new *Bivens* context.

Defendants also argue that Plaintiff's deliberate indifference claim presents a new context. (Defs.' Mem. 6 n.4.) "Of the three recognized *Bivens* contexts, Plaintiff's claim here is perhaps most similar to the claim at issue in *Carlson*, as it similarly arises under the Eighth Amendment." *Cruz*, 2021 WL 4691375, at *6. "But the core of Plaintiff's deliberate indifference allegation"—in which Plaintiff alleges that the court officers were "deliberate[ly] indifferen[t] to my health when they broke my arm and left me in extreme pain," (Compl. 3)— "is clearly and meaningfully different from a failure to provide life-saving medical care to an inmate with asthma," *Cruz*, 2021 WL 4691375, at *6.; *see also Scott v. Quay*, No. 19-CV-1075, 2020 WL 8611292, at *6 (E.D.N.Y. Nov. 16, 2020) (report and recommendation) (declining to find new *Bivens* context for deliberate indifference claims, noting that "[w]hile the standard of deliberate indifference may govern liability in both circumstances, the different contexts involved will require the [c]ourts to make distinct inquires"); *cf. Malesko,* 534 U.S. at 71–74 (holding that *Bivens* is not available under the Eighth Amendment to recover for a private prison's alleged deliberate indifference to a prisoner's illness).[6] Thus, in light of the Supreme

---

[6] The Court also notes that, unlike in *Carlson*, Plaintiff here received prompt medical treatment. In his Complaint, Plaintiff alleges Plaintiff alleges that when he "told the employees that [his][ arm was broken, "[s]omeone called for an ambulance and [he] was brought to Westchester Medical Center in Valhalla, N.Y." (Compl. 3.) Plaintiff states that he "got a[n] X-Ray done and was told by the doctor that [he] had subtain [sic] a broken left arm." (*Id.*) The Court therefore agrees with Defendants that "[t]here are no allegations that Plaintiff did not receive appropriate treatment for his injuries." (Defs.' Mem. 6 n4.) The present case differs significantly, for example, from *Pritchett v. Artuz*, where the court found that that the doctor's failure to order an X-Ray for the plaintiff's broken arm for six weeks could support a cognizable deliberate indifference claim. No. 99-CV-3957, 2000 WL 4157, at *3 (S.D.N.Y. Jan. 3, 2000). Here, in contrast, Plaintiff was immediately taken to the hospital, where a doctor ordered an X-Ray the same day as his injury. (*See* Compl. 3.)

Court's guidance that "'even a modest extension' of one of the three recognized scenarios 'is still an extension' that presents a new context," *Cruz*, 2021 WL 4691375, at *6 (quoting *Abbasi,* 137 S. Ct. at 1864), the Court also finds that Plaintiff's deliberate indifference claim presents a new *Bivens* context.

### b. Special Factors

"Because [Plaintiff] assert[s] claims that arise in a new context, [the Court] must proceed to the next step and ask whether there are factors that counsel hesitation." *Hernandez*, 140 S. Ct. at 744. The Supreme Court has noted:

> We have not attempted to "create an exhaustive list" of factors that may provide a reason not to extend *Bivens*, but we have explained that "central to [this] analysis" are "separation-of-powers principles." We thus consider the risk of interfering with the authority of the other branches, and we ask whether "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy," and "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."

*Hernandez*, 140 S. Ct. at 743 (citations omitted) (quoting *Abbasi*, 137 S. Ct. 1857–58). Additionally, "[w]here a plaintiff has at his disposal 'an alternative remedial structure' that would provide the same or similar relief in the absence of an implied remedy, courts decline to extend the *Bivens* remedy." *Cruz*, 2021 WL 4691375, at *6 (quoting *Abbasi*, 137 S. Ct. at 1858). "An alternative remedy need not be 'perfectly congruent' with *Bivens*." *Rivera*, 370 F. Supp. 3d at 371 (quoting *Minneci v. Pollard*, 565 U.S. 118, 129 (2012)). "[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not." *Abbasi*, 137 S. Ct. at 1863.

---

Courts in other districts have declined to find *Bivens* remedies where the plaintiff failed to state a deliberate indifference claim. *See, e.g.*, *Martin v. Gray*, No. 20-CV-741, 2021 WL 3855566, at *5 (E.D. Wis. Aug. 27, 2021) ("[A]n Eighth Amendment *Bivens* claim is inapplicable to this case because [the] [p]laintiff has failed to state a claim for an Eighth Amendment violation.").

Defendants argue that "Congress has created an intricate alternative remedial structure in the [Federal Torts Claim Act] [('FTCA')], which provides for monetary damages for torts committed by federal employees in the course of their official duties." (Defs.' Mem. 8 (citing 28 U.S.C. § 2679(b)).)[7]

"The Second Circuit has not yet decided whether, in the wake of *Abbasi*, the availability of an FTCA action precludes a Bivens remedy." *Scott*, 2020 WL 8611292, at *8. However, "several courts in this District have found the FTCA to qualify as an alternative remedy to *Bivens*." *Powell*, 2020 WL 5126392, at *10 (S.D.N.Y. Aug. 31, 2020) (collecting cases); *see also Cruz*, 2021 WL 4691375, at *6 ("Other alternative avenues for relief may include the [FTCA] . . . ."); *Scott*, 2020 WL 8611292, at *9 ("I agree with those district courts that have held that, post-*Abbasi*, the FTCA as a potential remedy counsels hesitation in extending a *Bivens* remedy . . . and supports dismissal of plaintiffs' *Bivens* claims." (quotation marks omitted)); *Style*, 2020 WL 3055319, at *4 ("[The plaintiff] has an available remedy under the [FTCA] . . . ."); *Sosa*, 2020 WL 1940550, at *4 ("Courts in this District have . . . found that, post-*Abbasi*, the FTCA as a potential remedy counsels hesitation in extending a *Bivens* remedy." (quotation marks

---

[7] The fact that Plaintiff may be procedurally barred from bringing an FTCA claim is irrelevant. (*See* Defs.' Mem. 9 n.6 ("Plaintiff may not have an available FTCA remedy in this case due to his failure timely to bring administrative claims or other procedural bars . . . .").) However, "it is the overall comprehensiveness of the statutory scheme at issue, not the adequacy of the particular remedies afforded, that counsels judicial caution in implying *Bivens* actions." *Dotson v. Griesa*, 398 F.3d 156, 166–167 (2d Cir. 2005) (citing *Schweiker v. Chilicky,* 487 U.S. 412, 421–22 (1988)); *see also Sosa v. Bustos*, No. 17-CV-417, 2020 WL 1940550, at *4 n.2 (S.D.N.Y. Apr. 22, 2020) ("The fact that [the plaintiff's] remedy under the FTCA is currently time-barred is inapposite."); *Rivera,* 370 F. Supp. 3d at 370 ("The present unavailability of an FTCA claim is immaterial to the analysis of whether the existence of an adequate alternative process counsels in favor of judicial restraint."); *Sanford v. Bruno*, No. 17-CV-5132, 2018 WL 2198759, at *7 (E.D.N.Y. May 14, 2018) (finding that alternative avenues of relief provided an adequate justification for the court to exclude a *Bivens* remedy "even though those remedies did not work in this instance").

15

omitted)); *Oliveras v. Basile*, 440 F. Supp. 3d 365, 373 (S.D.N.Y. 2020) ("[T]he [c]ourt finds that the existence of the FTCA as an alternative remedy qualifies as a special factor that counsels hesitation in extending *Bivens* to cover [the] [p]laintiff's claims."); *Martinez*, 2019 WL 6895436, at *7 ("[The] [p]laintiff could have pursued his claim under the [FTCA]."); *Ojo*, 2019 WL 3852391, at *14 (finding special factors counseled against *Bivens* extension where "[the] plaintiff's *Bivens* claims rely on the same facts as alleged in his FTCA claims"); *Rivera*, 370 F. Supp. 3d at 369–70 ("[The] [p]laintiff had an available tort remedy under the [FTCA]."); *Ramirez*, 2018 WL 6655600, at *5 ("[T]here are special factors that counsel against expanding a new *Bivens* remedy, including the availability of alternative relief (the FTCA . . .)."); *Abdoulaye*, 2018 WL 1890488, at *7 ("The [c]ourt thus concludes that the existence of the FTCA as a potential remedy counsels hesitation in extending a *Bivens* remedy to [the plaintiff's] claims."); *Morgan*, 2018 WL 618451, at *5–6 ("[I]n light of the Supreme Court's recent decision in [*Abbasi*], the existence of the alternative remedial structure is . . . a factor counselling hesitation in extending an implied damages remedy to [the plaintiff's] claims.").

Courts in other circuits and districts have similarly found that the FTCA provides an adequate alternative remedy. For example, the Fifth Circuit invoked the availability of an FTCA claim as a basis for dismissing a *Bivens* action. *See Oliva v. Nivar*, 973 F.3d 438, 443–44 (5th Cir. 2020) (finding that "special factors counsel against extending *Bivens*" in part due to the availability of the FTCA), *cert. denied*, 141 S. Ct. 2669 (2021); *see also Huckaby v. Bradley*, No. 16-CV-4327, 2018 WL 2002790, at *6 (D.N.J. Apr. 30, 2018) (finding that "the availability of a remedy against the United States on a claim of negligence under the FTCA, in light of [*Abbasi*], is a factor weighing against . . . recognizing a *Bivens* remedy"); *Free v. Peikar*, No. 17-CV-159, 2018 WL 905388, at *5–6 (E.D. Cal. Feb. 15, 2018) (declining to extend *Bivens* to a

First Amendment claim because the FTCA, inter alia, provides an adequate alternative remedy), *report and recommendation adopted*, 2018 WL 1569030 (E.D. Cal. Mar. 30, 2018).

The Court acknowledges that "district courts [in the Second Circuit] have disagreed on whether the availability of an FTCA action precludes a *Bivens* remedy in the wake of *Abbasi*." *Bueno Diaz*, 442 F. Supp. 3d at 710–11 (declining to find that the availability of the FTCA precluded a *Bivens* remedy); *see also Powell*, 2020 WL 5126392, at *10 ("The FTCA standing on its own does not give the [c]ourt reason to hesitate in extending *Bivens*.").

The Court agrees with the many cases which have found the existence FTCA to be a special factor counseling hesitation in extending *Bivens*. The Court finds the analysis in *Oliveras* to be persuasive. The *Oliveras* court first explained that it was "strongly guided by the contrasts between the Supreme Court's language in *Carlson* and its more recent language in [*Abbasi*]." *Oliveras,* 440 F. Supp. 3d at 373. Specifically, the court noted that "the [*Abbasi*] court has made clear that the law no longer requires an 'explicit congressional declaration that persons injured . . . may not recover money damages from agents but must be remitted to another remedy, equally effective in the view of Congress.'" *Id.* (alteration in original) (quoting *Carlson*, 446 U.S. at 19); *compare Carlson*, 446 U.S. at 18–19 (explaining that a *Bivens* action may be precluded "when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective" (emphasis in original)) *with Abbasi*, 137 S. Ct. at 1858 (noting that Congress's creation of "any alternative, existing process for protecting the injured party's interest" "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action" (alterations and quotation marks omitted)).

This argument is further bolstered by the Supreme Court's more recent language in *Hernandez*, which addressed this point even more directly. Although the Supreme Court in *Hernandez* "did not explicitly state [whether] the FTCA . . . as a general matter . . . provide[s] an alternative remedy to a *Bivens* claim," *Scott*, 2020 WL 8611292, at *9, the Supreme Court did note that "Congress passed the so-called Westfall Act, formally the Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679[,] [which] makes the [FTCA] 'the exclusive remedy for most claims against Government employees arising out of their official conduct,'" *Hernandez*, 140 S. Ct. at 748 (quoting *Hui v. Castaneda*, 559 U.S. 799, 806 (2010)). The Supreme Court further noted:

> The [Westfall] Act also permits claims "brought for a violation of the Constitution." 28 U.S.C. § 2679(b)(2)(A). By enacting this provision, Congress made clear that it was not attempting to abrogate *Bivens*, but the provision certainly does not suggest, as one of petitioners' amici contends, that Congress "intended for a robust enforcement of *Bivens* remedies." Instead, the provision simply left *Bivens* where it found it. It is not a license to create a new *Bivens* remedy in a context we have never before addressed, *see Malesko*, 534 U.S. at 68.

*Id.* at 748 n.9 (italics and citation omitted).

The Court also notes that the Fifth Circuit in *Oliva* considered "the separation of powers" "itself" to be "a special factor." *Oliva*, 973 F.3d at 444. The Fifth Circuit explained:

> [W]e must consider what Congress has done and what Congress has left undone. With the FTCA, Congress waived the United States' sovereign immunity as to some claims and not others. . . Congress did not make individual officers statutorily liable for excessive-force claims. This "silence of Congress is relevant" to the special-factors inquiry.

*Id.* (quoting *Abbasi*, 137 S. Ct. at 1862). *Oliva* is particularly relevant here, where Plaintiff also raises excessive force claims. (*See generally* Compl.).

In light of the Supreme Court's language in *Hernandez* and *Abbasi*, and as many courts in this district have found, the Court finds that the FTCA is an alternative remedy. Thus, the Court

18

declines to extend a *Bivens* remedy to Plaintiff's claims, and Plaintiff's claims are therefore dismissed.[8, 9]

### III. Conclusion

For the reasons stated above, the Court grants Defendants' Motion To Dismiss. In light of Plaintiff's pro se status, and because this is the first adjudication of Plaintiff's claims on the merits, Plaintiff's claims against Defendants Gizzi, Johnsen, and Lewis are dismissed without prejudice. Plaintiff has 30 days to explain to the Court in a filing why his claims against the remaining Defendants should not also be dismissed by the Court *sua sponte*. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss [a] case [proceeding IFP] at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted.").

If Plaintiff wishes to file an amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order. The amended complaint will replace, not supplement, the complaint currently before the Court. It therefore must contain *all* of the claims and factual allegations

---

[8] Defendants also argue that they are entitled to qualified immunity. (Defs.' Mem. 1; *see id.* at 12–13.) The Court will not opine on whether Defendants are entitled to qualified immunity, however, because Plaintiff has not plausibly pled that he is entitled to relief. *See Posr v. City of N.Y.*, No. 10-CV-2551, 2013 WL 2419142, at *10 n.8 (S.D.N.Y. June 4, 2013) ("Because [the defendant] did not violate [the] [p]laintiff's [constitutional] rights, there is no need to consider if [the defendant] is entitled to qualified immunity."), *aff'd sub nom. Posr v. Ueberbacher*, 569 F. App'x 32 (2d Cir. 2014).

[9] The Court notes that on November 15, 2021, Plaintiff requested that the Court issue an Order under *Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997), to ascertain the identities of Defendants John Doe 1–10. (*See* Dkt. No. 56.) The Court denies Plaintiff's request in light of its finding that the Complaint did not cognizably allege a claim against any defendant, including the John Does. If Plaintiff chooses to file an Amended Complaint, he may renew his request at that time.
However, the Court further notes that Plaintiff is in possession of two different incident reports, (*see* Compl. 5–7), which list the different officers involved in Plaintiff's sentencing. Thus, a *Valentin* Order may not reveal the identities of any additional officers that were not already named in the incident reports.

19

Plaintiff wishes the Court to consider. Failure to properly and timely amend will likely result in dismissal of the claims against Defendant with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. Nos. 38, 41) and to mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

DATED: February 2, 2022
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE